IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FERDELL HARVEY,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 05-2654 (JEI)

**OPINION**

**APPEARANCES:**

FERDELL HARVEY, Petitioner *pro se*
# 05816-016
USP Hazelton
P.O. Box 450
Bruceton Mills, WV 26525

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Renée M. Bumb, Esq.
401 Market Street, 4th Floor
Camden, New Jersey 08101
    Counsel for Respondent

**IRENAS**, Senior District Judge:

    Presently before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner bases his motion on five claims: (1) the Government failed to disclose memoranda containing statements of non-testifying witnesses that may have impeached the Government's witnesses at trial; (2) the Government failed to provide the court with "The Department of Justice, Bureau of Prisons, Administrative Procedural Act" which would have established that the assaulted officer, the complaining witness at Petitioner's

criminal trial, was not acting within the performance of his official duties; (3) the court unduly interfered with Petitioner's *pro se* cross-examination of a witness; (4) the Government failed to disclose video tapes of the area where the assault occurred; and (5) the Government engaged in prosecutorial misconduct by presenting perjured testimony against him at trial. For the reasons set forth below, the Petitioner's application will be denied.

## I.

Petitioner Ferdell Harvey was convicted on June 5, 2002, of one count of knowingly and willfully assaulting a federal officer in performance of his official duties and causing bodily injury, in violation of 18 U.S.C. §§ 111(a), 111(b) and 2. On November 8, 2002, Petitioner was sentenced to 120 months of imprisonment.

The evidence presented against Petitioner at trial established beyond a reasonable doubt that he assaulted Senior Officer Specialist John Jackson ("Officer Jackson") while the officer was in the performance of his official duties. On February 7, 2001, Officer Jackson, an employee of the Bureau of Prisons, was guarding the East Gate at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"). It was Officer Jackson's duty to search inmates' laundry bags, boots,

and jackets to ensure that they were not carrying contraband or weapons as they passed through the East Gate. At 10:30 a.m. on February 7, 2001, Petitioner, who was then an inmate at FCI Fairton, passed through the East Gate carrying a laundry bag. Officer Jackson searched Petitioner's laundry bag and confiscated ten contraband onions[1] contained therein. After this initial search, Officer Jackson observed Petitioner walking quickly away from the gate. Officer Jackson called Petitioner back to the gate and asked to search his laundry bag again and the inside of Petitioner's jacket.

Instead of returning to the gate, Petitioner ran away from Officer Jackson, and a chase of Petitioner ensued. Petitioner stopped running, turned around, and elbowed Officer Jackson on the right side of his face, knocking off his hat and glasses. Petitioner hit Officer Jackson with closed fists and elbows multiple times in the face and body. Overpowered by Petitioner, Officer Jackson was on the ground as Petitioner punched him with his fists until other officers arrived to pull Petitioner off of Officer Jackson. Officer Jackson sustained physical injuries, including damage to his shoulder which required surgery. Officer Jackson missed almost three months of work as a result of the injuries sustained on February 7, 2001.

---

[1] Prison officials have designated onions as contraband because onions are frequently used by prisoners for bartering or to pay off gambling debts.

3

Petitioner was indicted on February 19, 2002, by a federal grand jury for assaulting a federal officer while in the performance of his duties. On June 3, 2002, a bench trial commenced before the Honorable Stephen M. Orlofsky. Two days later, Petitioner was found guilty of forcibly assaulting Officer Jackson while the officer engaged in the performance of his official duties at FCI Fairton.

Petitioner appealed, but on December 24, 2003, his conviction was affirmed by the Third Circuit Court of Appeals. *U.S. v. Harvey*, No. 02-4149 (3d Cir. Dec. 24, 2003). Petitioner appealed his conviction and sentence on three grounds. *Id.* at *4. He claimed first that the Government failed to provide sufficient evidence for a reasonable trier of fact to find him guilty beyond a reasonable doubt. *Id.* Second, Petitioner claimed that his constitutional right to defend himself *pro se* was abridged when his stand-by counsel entered an appearance during the arraignment. *Id.* Third, Petitioner claimed that consideration of his prior offenses, which occurred before the enactment of the Sentencing Guidelines, violated the *ex post facto* clause of the U.S. Constitution. *Id.* The Third Circuit rejected each of Petitioner's claims on appeal and affirmed his conviction and sentence.

## II.

Section 2255 provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000). Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255. *See Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte*,

5

865 F.2d at 62.

As explained in more detail below, Petitioner asserts (1) the Government failed to disclose memoranda that he may have been able to use to impeach Officer Jackson; (2) the Government failed to provide the court with the "Bureau of Prisons Administrative Procedural Act" which would have established that Officer Jackson was not acting within the performance of his official duties; (3) the court unduly interfered with the Petitioner's *pro se* cross-examination of a witness; (4) the Government failed to disclose video tapes of the area where the assault occurred; and (5) the Government engaged in prosecutorial misconduct by presenting perjured testimony against him at trial.

For the reasons outlined below, the Court finds that the record evidence conclusively demonstrates that Petitioner is not entitled to the relief sought. Accordingly, Petitioner's application will be denied without an evidentiary hearing.

### III.

A defendant procedurally defaults on any claims he may have in a Section 2255 action by failing to raise objections during trial or failing to raise those issues on appeal. *U.S. v. Frady*, 456 U.S. 152, 167 (1982). Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Id.* at 167-68; *see also U.S. v. Pelullo*,

865 F.2d at 62.

As explained in more detail below, Petitioner asserts (1) the Government failed to disclose memoranda that he may have been able to use to impeach Officer Jackson; (2) the Government failed to provide the court with the "Bureau of Prisons Administrative Procedural Act" which would have established that Officer Jackson was not acting within the performance of his official duties; (3) the court unduly interfered with the Petitioner's *pro se* cross-examination of a witness; (4) the Government failed to disclose video tapes of the area where the assault occurred; and (5) the Government engaged in prosecutorial misconduct by presenting perjured testimony against him at trial.

For the reasons outlined below, the Court finds that the record evidence conclusively demonstrates that Petitioner is not entitled to the relief sought. Accordingly, Petitioner's application will be denied without an evidentiary hearing.

### III.

A defendant procedurally defaults on any claims he may have in a Section 2255 action by failing to raise objections during trial or failing to raise those issues on appeal. *U.S. v. Frady*, 456 U.S. 152, 167 (1982). Claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Id.* at 167-68; *see also U.S. v. Pelullo*,

399 F.3d 197, 220-21 (3d Cir. 2005) ("the proper standard of review for collateral attacks on trial errors . . . is the 'cause and actual prejudice standard'") (quoting *Frady*); *U.S. v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993) (cause and prejudice standard applies to collateral attacks on sentencing errors).

"To show cause, a petitioner must establish that 'some external impediment' prevented him from raising the claim in an earlier habeas corpus petitioner." *Wise v. Fulcomer*, 958 F.2d 30, 34 (3d Cir. 1992) (quoting *McCleskey v. Zant*, 499 U.S. 467, 497 (1991)).

The prejudice prong of the procedural default inquiry is satisfied by establishing a "reasonable probability that the result of the trial would have been different." *Strickler v. Greene*, 527 U.S. 263, 289 (1999); *see also U.S. v. Jenkins*, 333 F.3d 151, 155 (3d Cir. 2003) (refusing to find that Section 2255 petitioner demonstrated actual prejudice where the "overwhelming evidence" established that he had possessed at least 50 kilograms of marijuana); *Whitney v. Horn*, 280 F.3d 240, 258 (3d Cir. 2002) (finding that prejudice was established by the petitioner's showing a "reasonable probability that the result would have been different but for" his ineffective assistance of counsel).

In this case, all of Petitioner's claims could have been raised on appeal but were not.

**A.**

Petitioner's first claim asserts that the Government failed to disclose memoranda that Petitioner claims could have impeached Government witnesses at his trial.[2] Specifically, Petitioner contends that in connection with the investigation into the East Gate incident, statements were taken from four FCI Fairton officers. He claims that theses statements, which he refers to as "memoranda," prove that after the assault, Officer Jackson threatened to kill Petitioner. Petitioner apparently argues that Officer Jackson's threat is exculpatory *Brady* material because it could have impeached Officer Jackson.[3]

First, this is an issue that could have been raised on appeal. An alleged failure to disclose *Brady* material may not be raised on collateral attack for the first time unless a movant can show cause for the procedural default and actual prejudice resulting from the error. *U.S. v. Santos-Cruz*, No. 03-4286, 2003 U.S. Dist. LEXIS 20183 at *20-21 (E.D. Pa. Nov. 5, 2003). Petitioner never presented the trial court or the Third Circuit

---

[2] We note that Petitioner's own exhibits in support of his motion appear to document that the Government actually did disclose the documents in response to a formal *Brady* request or at least informed the defense of the their existence. (See Pet. A-14, May 31, 2002, letter from AUSA Diana Carrig to FPD Christopher O'Malley) ("Please be advised that four witnesses interviewed in conjunction with Officer Jackson's April 4, 2001, statement regarding Mr. Harvey indicated that Officer Jackson cursed during his statement.") However the Government does not raise this point in its Answer.

[3] Presumably Petitioner reasons that he could have demonstrated that Officer Jackson had personal hatred toward him and thus a motive to lie at trial. (See Pet. Br. at 5) ("movant would have shown that [Officer Jackson] would not stop at anything to bring the movant harm")

with his *Brady* claim in the direct proceedings, and he fails on collateral attack to allege any cause to excuse such default, or any resulting prejudice. Thus, his *Brady* claim is procedurally defaulted, and we deny it on this ground alone.

Second, Petitioner's *Brady* claim fails on the merits because the alleged "memoranda" are not material. "To establish a *Brady* violation requiring relief, a defendant must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. . . . The relevant question is: when viewed as a whole and in light of the substance of the prosecution's case, did the government's failure to provide the *Brady* impeachment evidence to the defense prior to the trial lead to an untrustworthy guilty verdict?" *Id.* at 253 (quoting *U.S. v. Bagley*, 473 U.S. 667, 682 (1985); *U.S. v. Pelullo*, 105 F.3d 117, 123 (3d Cir. 1997)).

The Government's failure to disclose the memoranda does not undermine our confidence in the verdict in Petitioner's case. Petitioner apparently reasons that he could have demonstrated Officer Jackson's bias against him. However, this bias was

evident by virtue of the fact that Petitioner severely beat Officer Jackson. The trial judge, as finder of fact, was aware of Officer Jackson's motive to testify in a manner unfavorable to Petitioner simply because Officer Jackson was Petitioner's alleged victim. Thus, we cannot conclude to a reasonable certainty that disclosure of the memoranda, when viewed in the context of the prosecution's entire case, would have altered the result.

Moreover, even assuming *arguendo* that this additional piece of impeachment material was sufficient to lead the trial judge to completely disregard all of Officer Jackson's testimony, we cannot be reasonably certain the verdict would have changed. At trial, the Government presented the testimony of two other FCI Fairton officers-- Officers Nicolary and Jones-- both of whom witnessed the assault and testified as to all of the elements of the charged offense.

Accordingly, Petitioner has not established either cause or actual prejudice and his procedural default will not be excused.

**B.**

Second, Petitioner claims that the Government failed to provide the Court with the "Bureau of Prisons Administrative

Procedural Act"[4] which Petitioner claims would have established that the Officer Jackson was not acting in the performance of his official duties, thereby negating one of the elements of the offense charged.

Petitioner makes two arguments in support of his assertion that Officer Jackson was not performing his official duties: (1) Officer Jackson violated the Bureau of Prisons' policy requiring corrections officers to stay at their post; and (2) Officer Jackson's use of force against Harvey also violated Bureau of Prisons policy.

Petitioner asserted the first argument in his Motion for Judgment of Acquittal, which Judge Orlofsky denied. Specifically, the district court stated:

> Harvey also argues that Officer Jackson was not engaged in the performance of his official duties at the time of the attack because he had left his post at the East Gate without explicit permission in accordance with prison rules. This contention is baseless. Officer Jackson left the East Gate area

---

[4] Petitioner apparently refers to two separate documents interchangeably as the "Bureau of Prisons Administrative Procedural Act." The first, attached as A-49 to Petitioner's response to the Government's Answer, is entitled "Federal Correctional Institution, Fairton, New Jersey, Specific Section Post Orders." The orders for the East Gate Officer state in relevant part: "you will remain on post until properly relieved, unless a Lieutenant has directed you to vacate the post. At no time will you vacate your post without first receiving permission from the Operations Lieutenant." Notably, the document bears an exhibit sticker: "Defendant's Exhibit 3."
   The second, attached as A-1 to the Petition, is a U.S. Department of Justice, Federal Bureau of Prisons "Program Statement" regarding "Use of Force and Application of Restraints on Inmates." It states in relevant part, that staff are authorized to "use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage and ensure institution security and good order."

> in response to an emergency situation, that is, to pursue a fleeing inmate, Harvey, who had violated prison rules by attempting to smuggle contraband from the commissary into the prison. . . . Although the East Gate orders do state that officers are not to leave their posts without approval, it does not follow from this that Officer Jackson [stopped] being 'engaged in the performance of his official duties' merely by pursuing a fleeing inmate slightly beyond the confines of his post at the East Gate. Thus, I concluded at trial that the Government had proven beyond a reasonable doubt that Officer Jackson was engaged in the performance of his official duties at the time of the attack by Harvey.

*U.S. v. Harvey*, No. 01-cr-640 at ¶ 9 (D.N.J. August 5, 2002)(attached as "A-9" to Petition).

Petitioner failed to appeal this issue and has asserted no cause to excuse his procedural default. Moreover, as a substantive matter, it appears-- based on the exhibit sticker and Judge Orlofsky's opinion-- that the document he complains was not introduced at trial was actually introduced at trial. Nothing requires the Government to independently submit evidence that the Defense has already introduced. Thus we find no constitutional error and no prejudice.

With respect to the second argument, Petitioner apparently asserts that Officer Jackson's use of force was unauthorized because Petitioner only possessed contraband onions, which did not pose a danger to any person or any property. Petitioner failed to raise this issue on appeal and asserts no cause to excuse the failure.

12

Further, Petitioner's argument ignores the facts, proven beyond a reasonable doubt at trial, establishing that Petitioner was the initial aggressor in the assault. Specifically, Officer Jackson testified at trial that Petitioner ran away from him, in violation of a direct order, and then suddenly turned and elbowed Officer Jackson in the right eye, knocking off Officer Jackson's hat and glasses. At that point Officer Jackson attempted to resist but was overpowered by Petitioner. Officer Jackson further testified that another officer had to come to Officer Jackson's assistance as Officer Jackson was on the ground while Petitioner was on top of him. Under the circumstances, the evidence proved that Officer Jackson was acting within the scope of his duties because the Bureau of Prisons policy allows reasonable use of force to protect the safety of staff.

Thus, the evidence at trial contradicts Petitioner's assertion that Officer Jackson's use of force was unauthorized. Accordingly, we hold Petitioner suffered no prejudice from the alleged error.

### c.

Petitioner's third claim is that the trial court unduly interfered with his "*pro se* cross-examination" of a witness at trial in violation of the Confrontation Clause. Petitioner asserts that the trial court impermissibly limited his

questioning of Captain Thompson based upon an allegedly erroneous objection by the Government. The trial transcript, attached as A-34 - A-36 to the Petition, documents the events Petitioner now challenges:

> Q [to Captain Thompson by Petitioner]: In the document from Mr. Tilghan . . . is this reflected . . . that he had to remove the inmate off top of Officer Jackson?
>
> A: States that Mr. Tilghan grabbed you by the left arm, that's all I read here, by the left arm and behind his back at which he was being given orders to go down, the staff arrived at that time.
>
> Q: And at that point, the inmate would have been in an upright position according to Mr. Tilghman?
> MS. CARRIG: Objection, you Honor. This witness already said he was not at the scene at this point and the document speaks for itself. And the defendant has subpoenaed Officer Tilghman to be here as well and he can ask these questions of Officer Tilghman.
>
> . . .
>
> THE COURT: What is it you're asking Captain Thompson about D-8, which is Mr. Tilghman's memorandum of February 7, 2001?
>
> MR. HARVEY: It indicates inmate was pulled off Officer Jackson.
>
> THE COURT: Captain Thompson was not present at the scene, he has no firsthand knowledge of the event, he was not there, he did not participate, he did not observe anything . . . If you want to call Mr. Tilghman who wrote the memorandum and ask about this, that's fine. But you're not asking appropriate questions of Captain Thompson. Okay?
>
> MR. HARVEY: Okay.

As with the other issues raised, we note as an initial

14

matter that Petitioner has procedurally defaulted on this claim and asserts no cause excusing the default.

Also, Petitioner has suffered no prejudice because no error was committed. First, the trial transcript clearly indicates that Captain Thompson was a *defense* witness, examined on *direct* by Petitioner. Thus, there is no Confrontation Clause issue. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses *against* him")(emphasis supplied).[5]

More to the point however, based upon the record, the trial court's evidentiary ruling on the witness's competency was correct. The only limits placed on Petitioner's presentation of his case were the limitations imposed on both the defense and the Government by the Federal Rules of Evidence. As the trial court noted, Petitioner was free to present his case through documents and other witness' testimony within the rules of evidence.[6] Accordingly, Petitioner cannot establish actual prejudice and his procedural default on this claim will not be excused.

---

[5] *See also Crawford v. Washington*, 541 U.S. 36, 43 & 50 (2004)(describing the right protected by the Confrontation Clause as "the right to confront one's accusers" and explaining, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.").

[6] In fact, the trial transcript indicates that immediately after Captain Thomson testified, Petitioner called Officer Tilghman to the stand.

**D.**

Petitioner's fourth claim asserts that the Government violated *Brady* by failing to disclose videotapes of the area where the assault occurred. Pursuant to a Discovery for Inspection Order dated October 15, 2001, Petitioner requested of the Government any film, electronic, or digital recordings of the February 7, 2001, incident between Petitioner and the staff at FCI Fairton. (Pet. Br. at A-19). Petitioner asserts that he never received video taped surveillance of the area where the February 7, 2001 assault took place.[7]

As explained above, an alleged failure to disclose *Brady* material may not be raised on collateral attack for the first time unless a movant can show cause for the procedural default and actual prejudice resulting from the error. *Santos-Cruz*, 2003 U.S. Dist. LEXIS 20183 at *20-21. Petitioner never presented the trial court or the Third Circuit with his *Brady* claim in the direct proceedings, and he fails on collateral attack to allege any cause to excuse such default, or any resulting prejudice. Thus, his *Brady* claim is procedurally defaulted.

We would also deny Petitioner's *Brady* claim on the merits. "To establish a *Brady* violation requiring relief, a defendant must show that (1) the government withheld evidence, either

---

[7] The Court is unable to infer from Petitioner's submissions what the video tapes actually captured.

16

willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *Lambert*, 387 F.3d at 252. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. . . . The relevant question is: when viewed as a whole and in light of the substance of the prosecution's case, did the government's failure to provide the *Brady* impeachment evidence to the defense prior to the trial lead to an untrustworthy guilty verdict?" *Id.* at 253.

Here, Petitioner's assertions that exculpatory evidence was withheld by the Government amount to nothing more than bald assertions and conclusory allegations that do not warrant an evidentiary hearing. *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987). Petitioner gives no description of the video tapes' contents. He merely concludes "[h]ad the [G]overnment [turned over] the surveillance camera's tapes from FCI Fairton, the outcome of [Petitioner's] proceeding would have been different with respect to what the trial record offer's [*sic*] as the truth." (Pet. Br. at 18). Petitioner does not clearly explain how the outcome would have been different, except to state that "the video cameras' tape's . . . refute Officer Jackson's testimony." (Pet. Reply at 15).

This Court, then, for the reasons explained in Section A

above, has no basis for finding a reasonable probability that Petitioner's criminal trial would have resulted differently. Even if Officer Jackson had been entirely discredited, other witnesses at trial established all the elements of the Government's case. Accordingly, Petitioner is not entitled to relief.

### E.

Lastly, Petitioner asserts that the Government presented perjured testimony against him at trial. Petitioner claims that portions of Officer Jackson's testimony for the Government were perjured. Once again, Petitioner failed to raise this issue on appeal, asserts no cause to excuse his procedural default, and we conclude that Petitioner has suffered no prejudice as a result of the default.

To succeed in collaterally attacking his sentence based on allegations that the Government presented perjured testimony, Petitioner must establish: (1) Officer Jackson committed perjury; (2) the Government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *Lambert*, 387 F.3d at 242.

First, while Petitioner points to minor discrepancies in Officer Jackson's trial testimony, we have no basis to infer from

the record that Officer Jackson testified falsely.[8]

Second, the statements Petitioner asserts were untruthful could not have affected the verdict in this case. Petitioner disputes several statements Officer Jackson made about the *extent* of his injuries, for example, whether or not his right eye was swollen after the assault and to what extent his right shoulder was injured.

Officer Jackson's medical records introduced at trial established the basic fact that he was injured as a result of the assault. That is all that is required for a conviction under 18 U.S.C. § 111(a), 111(b) and 2. *See U.S. v. Johnson*, 462 F.2d 423, 427 (3d Cir. 1972). Nothing in the statute requires the Government to prove that the federal officer's injuries were severe or even serious. Thus, even if Officer Jackson intentionally exaggerated the extent of his injuries, we cannot find a reasonable probability that the verdict would have been different because the severity of his injuries is not material to the verdict.

Accordingly, Petitioner has not established prejudice resulting from the asserted error.

---

[8] We note that while Petitioner did not specifically assert his present argument on appeal, the Third Circuit was not particularly concerned with the inconsistencies in Officer Jackson's testimony. *See U.S. v. Harvey*, 90 Fed. Appx. 437 (3d Cir. 2003)("such minor inconsistencies, if inconsistencies at all, do nothing to undermine the weight of the evidence against [Petitioner].").

## IV.

For the reasons set forth above, this Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 without an evidentiary hearing. The Court will issue an appropriate order.

Date: February 27, 2006

JOSEPH E. IRENAS, S.U.S.D.J.